

LEAVITT LAW FIRM
**DENNIS M. LEAVITT, ESQ.**
Nevada Bar No. 3757
**GLENN SCHEPPS, ESQ.**
Nevada Bar No. 4742
229 Las Vegas Boulevard South
Las Vegas, Nevada 89101
(702) 384-3963

Attorney for Plaintiffs

# United States District Court

## DISTRICT OF NEVADA

GEORGIA HAMILTON, individually, and as Special Administrator of the Estate of Earnest James, Jr.; ONEIDA JAMES; MICHAEL JAMES; DONNA CAUSEY; VICTOR JAMES,

      Plaintiffs,

vs.

TIMOTHY EDWARD VAN DUZER, M. D.; DOES I-X; ROE CORPORATIONS I-X,

      Defendants.

    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )

CASE NO.:  CV-S-05-0046-JCM-GWF

# PLAINTIFFS' MOTION FOR DECLARATORY RELIEF

    COME NOW, Plaintiffs, by and through their attorney of record, Glenn Schepps, Esq., of the Leavitt Law Firm, and move this Honorable Court to enter an Order declaring that Section 5 of AB 1 is applicable to the instant case.

/ / /

/ / /

/ / /

1

This Motion is made and based upon the Points and Authorities attached hereto, all papers and pleadings on file herein, as well as any evidence that may be presented at the hearing of the instant Motion.

DATED this ___3rd___ day of ___march___, 2006.

LEAVITT LAW FIRM


BY: _____
    GLENN SCHEPPS, ESQ.
    Nevada Bar No. 4742
    229 Las Vegas Boulevard South
    Las Vegas, Nevada 89101
    Attorney for Plaintiffs

## **POINTS AND AUTHORITIES**

## **I.**

## **STATEMENT OF THE CASE**

This is a medical malpractice/wrongful death case with diversity of citizenship. Plaintiffs filed their Complaint on January 14, 2005. In their Complaint, Plaintiffs allege claims for malpractice, gross malpractice, loss of consortium, punitive damages, elder abuse/neglect, and attorney's fees. Defendant filed his Answer on or about March 9, 2005.

Plaintiffs allege, and Defendant disputes, that the malpractice/gross malpractice/elder abuse - neglect of Defendant, which conduct occurred on May 22, 2004 and May 23, 2004, caused the death of decedent Earnest James, Jr. on June 9, 2004.

/ / /

/ / /

/ / /

Law Offices
LEAVITT LAW FIRM
Law Building
229 Las Vegas Blvd. So.
Las Vegas, Nevada 89101-5720
Tel: (702) 384-3963

## II.

## ARGUMENT

NRS 30.040 provides:

> Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The requirements for declaratory relief are as follows: (1) There must exist a justiciable controversy, that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) The controversy must be between persons whose interests are adverse; (3) The parties seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectable interest; and (4) The issue involved in the controversy must be ripe for judicial determination. See <u>Kress vs. Corey</u>, 65 Nev. 1, 189 P.2d 352 (1948); <u>Nevada Mgt. Co. vs. Jack</u>. 75 Nev. 232, 338 P.2d 71 (1959).

Beginning at the private mediation between the parties and continuing through Defendant's recent dispositive Motion, Defendant has taken the position that Section 5 of the "Keep Our Doctors In Nevada Initiative (KODIN)" (Exhibit 1, page 2) is applicable to the instant case, thereby contending that the amount of non-economic damages awardable in this action must not exceed $350,000.00 and that the exception for gross malpractice is absent from KODIN and is therefore inapplicable to the instant case.

Throughout these proceedings, Plaintiffs have asserted the position that Section 5 of AB 1 (Exhibit 2, pages 4-5), which states that the non-economic damages awardable to each plaintiff from each defendant must not exceed $350,000.00, which limit does not

LAW OFFICES
LEAVITT LAW FIRM
LAW BUILDING
229 LAS VEGAS BLVD. SO.
LAS VEGAS, NEVADA 89101-5720
TEL: (702) 384-3963

apply in cases of gross malpractice or exceptional circumstances, is applicable to the instant case.

Section 12 of KODIN provides:

> The amendatory provisions of sections 5, 6, and 8 of this act apply only to a cause of action that accrues on or after the effective date of this act.

The effective date of KODIN was November 16, 2004, subsequent to the public vote on the Initiative. The cause of action in this case accrued between May 22, 2004 and June 9, 2004. Therefore, the amendatory provisions of Section 5 of KODIN do not apply to the instant case. Accordingly, Section 5 of AB 1 which applies to causes of action accruing on or after October 1, 2002, applies to the instant case.

The instant Motion satisfies the requirements for declaratory relief. There is a justiciable controversy between Plaintiffs and Defendant in which each is asserting a claim against the other with regard to the statute applicable to the instant case. The controversy is between Plaintiffs and Defendant, whose interests are adverse. Plaintiffs, the parties seeking declaratory relief, have a legally protectable interest in this case, specifically, the law applicable to this case and the issue of awardable damages. The issue involved in this controversy is ripe for judicial determination as this case is proceeding toward trial.

Therefore, Plaintiffs respectfully submit that the instant Motion satisfies the requirements for declaratory relief. Pursuant to the argument above, Plaintiffs accordingly respectfully request that this Honorable Court enter an Order declaring that Section 5 of AB 1 is applicable to the instant case.

/ / /

/ / /

/ / /

4

## III.

## CONCLUSION

Based upon the above and foregoing, Plaintiffs respectfully request that this Honorable Court enter an Order declaring that Section 5 of AB 1 is applicable to the instant case.

DATED this ___3rd___ day of ___March___, 2006.

LEAVITT LAW FIRM


BY:_____
GLENN SCHEPPS, ESQ.
Nevada Bar No. 4742
229 Las Vegas Boulevard South
Las Vegas, Nevada 89101
Attorney for Plaintiffs

# Certificate of Mailing

I hereby certify that on the ___3rd___ day of ___march___, 2006, service of the foregoing MOTION FOR DECLARATORY RELIEF was made this date by depositing a true copy of the same for mailing, first class mail, at Las Vegas, Nevada addressed as follows:

LeAnn Sanders, Esq.
7401 West Charleston Boulevard
Las Vegas, Nevada 89117


_____
An employee of Leavitt Law Firm

LAW OFFICES
LEAVITT LAW FIRM
LAW BUILDING
229 LAS VEGAS BLVD. SO.
LAS VEGAS, NEVADA 89101-5720
TEL: (702) 384-3963

5

# EXHIBIT 1

# EXHIBIT 1

*Question 3 -*
*Keep Our Doctors*
*In Nevada Initiative*
*Petition*
*(KODIN)...*

INITIATIVE

Explanation—Matter in **bolded italics** is new, matter between brackets [omitted material]
is material to be omitted.

AN ACT relating to medical malpractice; limiting attorney's fees in actions against
providers of health care; eliminating the exceptions pertaining to noneconomic
damages; making changes concerning the payment of damages; revising the
statute of limitations for the filing of actions; eliminating joint and several
liability; making various other changes concerning such actions; and providing for
other matters properly relating thereto.

WHEREAS, There exists a major health care crisis in this state attributable to the
skyrocketing cost of medical malpractice insurance; and

WHEREAS, Such skyrocketing medical malpractice insurance costs have resulted in a
potential breakdown in the delivery of health care in this state, severe hardships
concerning the availability of health care for the medically indigent, a denial of
access to health care for the economically marginal, and the depletion of
physicians such as to substantially worsen the quality of health care available to
the residents of this state; and

WHEREAS, It is necessary to provide an adequate and reasonable remedy to address
this health care crisis and to protect the health, welfare and safety of the residents
of this state; now, therefore,

The People of the State of Nevada do enact as follows:

**Section. 1.** Chapter 7 of NRS is hereby amended by adding thereto a new section to
read as follows:
*1. An attorney shall not contract for or collect a fee contingent on the amount of
recovery for representing a person seeking damages in connection with an action for
injury or death against a provider of health care based upon professional negligence in
excess of:*
*(a) Forty percent of the first $50,000 recovered;*
*(b) Thirty-three and one-third percent of the next $50,000 recovered;*
*(c) Twenty-five percent of the next $500,000 recovered; and*
*(d) Fifteen percent of the amount of recovery that exceeds $600,000.*
*2. The limitations set forth in subsection 1 apply to all forms of recovery, including,
without limitation, settlement, arbitration and judgment.*
*3. For the purposes of this section, "recovered" means the net sum recovered by the
plaintiff after deducting any disbursements or costs incurred in connection with the
prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff
and general and administrative expenses incurred by the office of the attorney are not
deductible disbursements or costs.*
*4. As used in this section:*
*(a) "Professional negligence" means a negligent act or omission to act by a provider
of health care in the rendering of professional services, which act or omission is the
proximate cause of a personal injury or wrongful death. The term does not include
services that are outside the scope of services for which the provider of health care is
licensed or services for which any restriction has been imposed by the applicable
regulatory board or health care facility.*
*(b) "Provider of health care" means a physician licensed under chapter 630 or 633
of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical
therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental
medicine, medical laboratory director or technician, or a licensed hospital and its
employees.*

**Sec. 2.** Chapter 41A of NRS is hereby amended by adding thereto the provisions set
forth as sections 3 to 6, inclusive, of this act.

**Sec. 3.** *"Professional negligence" means a negligent act or omission to act by a
provider of health care in the rendering of professional services, which act or omission
is the proximate cause of a personal injury or wrongful death. The term does not
include services that are outside the scope of services for which the provider of health
care is licensed or services for which any restriction has been imposed by the
applicable regulatory board or health care facility.*

## INITIATIVE

**Sec. 4.** *"Provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, or a licensed hospital and its employees.*

**Sec. 5.** *In an action for injury or death against a provider of health care based upon professional negligence, the injured plaintiff may recover noneconomic damages, but the amount of noneconomic damages awarded in such an action must not exceed $350,000.*

**Sec. 6.** *1. In an action for injury or death against a provider of health care based upon professional negligence, each defendant is liable to the plaintiff for economic damages and noneconomic damages severally only, and not jointly, for that portion of the judgment which represents the percentage of negligence attributable to the defendant.*
*2. This section is intended to abrogate joint and several liability of a provider of health care in an action for injury or death against the provider of health care based upon professional negligence.*

**Sec. 7.** NRS 41A.003 is hereby amended to read as follows:
41A.003 As used in this chapter, unless the context otherwise requires, the words and terms defined in NRS 41A.004 to 41A.013, inclusive, *and sections 3 and 4 of this act* have the meanings ascribed to them in those sections.

**Sec. 8.** NRS 41A.097 is hereby amended to read as follows:
41A.097 1. Except as otherwise provided in subsection 3, an action for injury or death against a provider of health care may not be commenced more than 4 years after the date of injury or 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:
(a) Injury to or the wrongful death of a person occurring before October 1, 2002, based upon alleged professional negligence of the provider of health care;
(b) Injury to or the wrongful death of a person occurring before October 1, 2002, from professional services rendered without consent; or
(c) Injury to or the wrongful death of a person occurring before October 1, 2002, from error or omission in practice by the provider of health care.
2. Except as otherwise provided in subsection 3, an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of injury or [2 years] *1 year* after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:
(a) Injury to or the wrongful death of a person occurring on or after October 1, 2002, based upon alleged professional negligence of the provider of health care;
(b) Injury to or the wrongful death of a person occurring on or after October 1, 2002, from professional services rendered without consent; or
(c) Injury to or the wrongful death of a person occurring on or after October 1, 2002, from error or omission in practice by the provider of health care.
3. This time limitation is tolled for any period during which the provider of health care has concealed any act, error or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to him.
4. For the purposes of this section, the parent, guardian or legal custodian of any minor child is responsible for exercising reasonable judgment in determining whether to prosecute any cause of action limited by subsection 1 or 2. If the parent, guardian or custodian fails to commence an action on behalf of that child within the prescribed period of limitations, the child may not bring an action based on the same alleged injury against any provider of health care upon the removal of his disability, except that in the case of:
(a) Brain damage or birth defect, the period of limitation is extended until the child attains 10 years of age.
(b) Sterility, the period of limitation is extended until 2 years after the child discovers the injury.
[5. As used in this section, "provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, or a licensed hospital as the employer of any such person.]

– 80 –

2

Sec. 9.   Chapter 42 of NRS is hereby amended by adding thereto a new section to read as follows:

1.   *In an action for injury or death against a provider of health care based upon professional negligence, if the defendant so elects, the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the injury or death pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services. If the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount that the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence.*

2.   *A source of collateral benefits introduced pursuant to subsection 1 may not:*
(a)  *Recover any amount against the plaintiff; or*
(b)  *Be subrogated to the rights of the plaintiff against a defendant.*

3.   *In an action for injury or death against a provider of health care based upon professional negligence, a district court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds $50,000 in future damages.*

4.   *In entering a judgment ordering the payment of future damages by periodic payments pursuant to subsection 3, the court shall make a specific finding as to the dollar amount of periodic payments that will compensate the judgment creditor for such future damages. As a condition to authorizing periodic payments of future damages, the court shall require a judgment debtor who is not adequately insured to post security adequate to assure full payment of such damages awarded by the judgment. Upon termination of periodic payments of future damages, the court shall order the return of this security, or so much as remains, to the judgment debtor.*

5.   *A judgment ordering the payment of future damages by periodic payments entered pursuant to subsection 3 must specify the recipient or recipients of the payments, the dollar amount of the payments, the interval between payments, and the number of payments or the period of time over which payments will be made. Such payments must only be subject to modification in the event of the death of the judgment creditor. Money damages awarded for loss of future earnings must not be reduced or payments terminated by reason of the death of the judgment creditor, but must be paid to persons to whom the judgment creditor owed a duty of support, as provided by law, immediately before his death. In such cases, the court that rendered the original judgment may, upon petition of any party in interest, modify the judgment to award and apportion the unpaid future damages in accordance with this subsection*

6.   *If the court finds that the judgment debtor has exhibited a continuing pattern of failing to make the periodic payments as specified pursuant to subsection 5, the court shall find the judgment debtor in contempt of court and, in addition to the required periodic payments, shall order the judgment debtor to pay the judgment creditor all damages caused by the failure to make such periodic payments, including, but not limited to, court costs and attorney's fees.*

7.   *Following the occurrence or expiration of all obligations specified in the periodic payment judgment, any obligation of the judgment debtor to make further payments ceases and any security given pursuant to subsection 4 reverts to the judgment debtor.*

8.   *As used in this section:*
(a)  *"Future damages" includes damages for future medical treatment, care or custody, loss of future earnings, loss of bodily function, or future pain and suffering of the judgment creditor.*
(b)  *"Periodic payments" means the payment of money or delivery of other property to the judgment creditor at regular intervals.*
(c)  *"Professional negligence" means a negligent act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death. The term does not include services that are outside the scope of services for which the provider of health care is licensed or services for which any restriction has been imposed by the applicable regulatory board or health care facility.*
(d)  *"Provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, licensed nurse, dispensing optician, optometrist, registered physical*

therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, or a licensed hospital and its employees.

**Sec. 10.** NRS 41A.031, 41A.041 and 42.020 are hereby repealed.

**Sec. 11.** If any provision of this act, or the application thereof to any person, thing or circumstance is held invalid, such invalidity shall not affect the provisions or application of this act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

**Sec. 12.** The amendatory provisions of sections 5, 6, and 8 of this act apply only to a cause of action that accrues on or after the effective date of this act.

## LEADLINES OF REPEALED SECTIONS

41A.031   Limitations on liability for noneconomic damages; exceptions.

41A.041   Medical malpractice: Several liability for noneconomic damages.

42.020   Actions for damages for medical malpractice: Reduction of damages by amount previously paid or reimbursed; payment of future economic damages.

- 82 -

4

# EXHIBIT 2

# EXHIBIT 2

# AB 1
# (18ᵗʰ Special Session)...



| Home | Scheduled Meetings | Search | Site Map | Contact Us |

# AB1

Get Acrobat Reader

**Introduced on** Jul 30, 2002

By Perkins, Buckley, Anderson, Hettrick, Cegavske, Angle, Arberry Jr., Bache, Beers, Berman, Bower, Brown, Carpenter, Chowning, Claborn, Collins, de Braga, Dini, Jr., Freeman, Gibbons, Giunchigliani, Goldwater, Gustavson, Humke, Koivisto, Lee, Leslie, Manendo, Martin, Marvel, McClain, Mortenson, Neighbors, Nolan, Oceguera, Ohrenschall, Parks, Parnell, Price, Smith, Tiffany, Williams, Maggio, Titus, Amodei, Care, Carlton, Coffin, Jacobsen, Mathews, McGinness, Milburn, Neal, O'Connell, O'Donnell, Paulk, Rawson, Rhoads, Schneider, Shaffer, Townsend, Washington, Wiener, *Makes various changes related to medical and dental malpractice. (BDR 3-17)*

**Fiscal Note**
Effect On Local Government: *No.*
Effect on the State: *No.*

**Most Recent History Action:** Approved by the Governor. Chapter 3.
(See full bill history below)

**Hearings**  Assembly Medical Malpractice Issues  Jul-29-2002
Senate Committee of the Whole          Jul-29-2002
Senate Committee of the Whole          Jul-30-2002
Assembly Medical Malpractice Issues  Jul-30-2002
Senate Committee of the Whole          Jul-31-2002
Assembly Medical Malpractice Issues  Jul-31-2002

**Votes**  Assembly Final Passage  Jul-31  32 Yea , 10 Nay , 0 Excused , 0 Not Voting , 0 Absent
Senate Final Passage    Jul-31  21 Yea , 0 Nay ,  0 Excused , 0 Not Voting , 0 Absent

| | | | | |
|---|---|---|---|---|
| **Bill Text (PDF)** | As Introduced<br>As Enrolled | 1st Reprint | Second Reprint | Third Reprint |
| **Bill Text (HTML)** | As Introduced<br>As Enrolled | 1st Reprint | Second Reprint | Third Reprint |
| **Amendments (HTML)** | Amend. No.1 Amend. No.4 Amend. No.CA1 | | | |

**Bill History**

Jul 30, 2002
Read first time.
Referred to Committee on Medical Malpractice Issues.
To printer.
From printer. To committee.
From committee: Amend, and do pass as amended.
Declared an emergency measure under the Constitution.

- Read third time. Amend       (Amend. No. 1). To printer.
- From printer. To engrossment. Engrossed. First reprint.
- Placed on General File.

Jul 31, 2002

- Read third time. Passed, as amended. Title approved. Preamble adopted, as amended. (Yeas: 32, Nays: 10). To Senate.
- In Senate.
- Read first time. Referred to Committee of the Whole.
- To committee.
- From committee: Amend, and do pass as amended.
- Declared an emergency measure under the Constitution.
- Read third time. Amended. (Amend. No. 4). To printer.
- From printer. To re-engrossment.
- Re-engrossed. Second reprint.
- Placed on General File.
- Read third time. Passed, as amended. Title approved. Preamble adopted, as amended. (Yeas: 21, Nays: None). To Assembly.
- In Assembly.
- Senate Amendment No. 4 not concurred in.
- To Senate.
- In Senate.
- Senate Amendment (Amend. No. 4) not receded from.
- Conference requested. First Conference Committee appointed by Senate. To Assembly.
- In Assembly.
- First Conference Committee appointed by Assembly. To committee.

Aug 01, 2002

- From committee: Concur in Senate Amendment No. 4 and further amend.
- **First Conference report adopted by Assembly.**
- First Conference report adopted by Senate.
- To printer.
- From printer. To re-engrossment. Re-engrossed. Third reprint.
- To enrollment.
- Enrolled and delivered to Governor.

Aug 07, 2002

- Approved by the Governor. Chapter 3.
**Sections 1 to 17, inclusive, 51 to 58, inclusive, 62 to 73, inclusive, and 75 effective October 1, 2002. Sections 18 to 39, inclusive, 44 to 49, inclusive, 59 and 60 effective July 1, 2003.**



Assembly Bill No. 1–Assemblymen Perkins, Buckley, Anderson, Hettrick, Cegavske, Angle, Arberry, Bache, Beers, Berman, Brower, Brown, Carpenter, Chowning, Claborn, Collins, de Braga, Dini, Freeman, Gibbons, Giunchigliani, Goldwater, Gustavson, Humke, Koivisto, Lee, Leslie, Manendo, Martin, Marvel, McClain, Mortenson, Neighbors, Nolan, Oceguera, Ohrenschall, Parks, Parnell, Price, Smith, Tiffany and Williams

Joint Sponsors: Senators Raggio, Titus, Amodei, Care, Carlton, Coffin, Jacobsen, Mathews, McGinness, Milburn, Neal, O'Connell, O'Donnell, Paulk, Rawson, Rhoads, Schneider, Shaffer, Townsend, Washington and Wiener

## CHAPTER..........

AN ACT relating to malpractice; limiting the liability of certain medical providers for negligent acts under certain circumstances; establishing a limitation on the amount of noneconomic damages that may be awarded in an action for medical malpractice or dental malpractice; providing for several liability of a defendant for noneconomic damages in an action for medical malpractice; making various changes concerning the payment of future economic damages in actions for medical malpractice; providing for the mandatory dismissal of an action for medical malpractice or dental malpractice under certain circumstances; repealing the provisions pertaining to the use of screening panels for an action for medical malpractice or dental malpractice; revising the statute of limitations for filing an action for medical malpractice or dental malpractice; making various other changes concerning actions for medical malpractice or dental malpractice; requiring certain district judges to receive training concerning the complex issues involved in medical malpractice litigation; requiring courts to impose certain sanctions on attorneys in certain circumstances; making various changes relating to the reporting of claims of malpractice or negligence; requiring the commissioner of insurance to report to the legislative commission and the legislature regarding certain premiums for insurance and certain jury verdicts and settlements; and providing other matters properly relating thereto.

WHEREAS, The State of Nevada is experiencing extreme difficulties attracting and maintaining a sufficient network of physicians to meet the needs of the residents of this state; and

WHEREAS, The Nevada Legislature has determined that the shortage of physicians and the inability to attract new physicians to this state pose a serious threat to the health, welfare and safety of the residents of the State of Nevada; and

WHEREAS, It is recognized that patients who have been injured by medical malpractice must be afforded appropriate access to legal remedies for their injuries and that judicial discretion to render decisions in malpractice actions involving exceptional circumstances must be preserved; now, therefore,

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN
SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

**Section 1.**   Chapter 41 of NRS is hereby amended by adding thereto a new section to read as follows:

*1.   Except as otherwise provided in subsection 2 and NRS 41.505:*

– 2 –

(a) *A hospital which has been designated as a center for the treatment of trauma by the administrator of the health division of the department of human resources pursuant to NRS 450B.237 and which is a nonprofit organization;*

(b) *A hospital other than a hospital described in paragraph (a);*

(c) *An employee of a hospital described in paragraph (a) or (b) who renders care or assistance to patients;*

(d) *A physician or dentist licensed under the provisions of chapter 630, 631 or 633 of NRS who renders care or assistance in a hospital described in paragraph (a) or (b), whether or not the care or assistance was rendered gratuitously or for a fee; and*

(e) *A physician or dentist licensed under the provisions of chapter 630, 631 or 633 of NRS:*

(1) *Whose liability is not otherwise limited pursuant to NRS 41.032 to 41.0337, inclusive; and*

(2) *Who renders care or assistance in a hospital of a governmental entity that has been designated as a center for the treatment of trauma by the administrator of the health division of the department of human resources pursuant to NRS 450B.237, whether or not the care or assistance was rendered gratuitously or for a fee,*

*that in good faith renders care or assistance necessitated by a traumatic injury demanding immediate medical attention, for which the patient enters the hospital through its emergency room or trauma center, may not be held liable for more than $50,000 in civil damages, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant arising out of any act or omission in rendering that care or assistance if the care or assistance is rendered in good faith and in a manner not amounting to gross negligence or reckless, willful or wanton conduct.*

2. *The limitation on liability provided pursuant to this section does not apply to any act or omission in rendering care or assistance:*

(a) *Which occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient, unless surgery is required as a result of the emergency within a reasonable time after the patient is stabilized, in which case the limitation on liability provided by subsection 1 applies to any act or omission in rendering care or assistance which occurs before the stabilization of the patient following the surgery; or*

(b) *Unrelated to the original traumatic injury.*

3. *If:*

(a) *A physician or dentist  provides follow-up care to a patient to whom he rendered care or assistance pursuant to subsection 1;*

(b) *A medical condition arises during the course of the follow-up care that is directly related to the original traumatic injury for which care or assistance was rendered pursuant to subsection 1; and*

(c) *The patient files an action for malpractice based on the medical condition that arises during the course of the follow-up care,*

*there is a rebuttable presumption that the medical condition was the result of the original traumatic injury and that the limitation on liability*

– 3 –

*provided by subsection 1 applies with respect to the medical condition that arises during the course of the follow-up care.*

*4.  For the purposes of this section:*

*(a)  "Reckless, willful or wanton conduct," as it applies to a person to whom subsection 1 applies, shall be deemed to be that conduct which the person knew or should have known at the time he rendered the care or assistance would be likely to result in injury so as to affect the life or health of another person, taking into consideration to the extent applicable:*

*(1)  The extent or serious nature of the prevailing circumstances;*

*(2)  The lack of time or ability to obtain appropriate consultation;*

*(3)  The lack of a prior medical relationship with the patient;*

*(4)  The inability to obtain an appropriate medical history of the patient; and*

*(5)  The time constraints imposed by coexisting emergencies.*

*(b)  "Traumatic injury" means any acute injury which, according to standardized criteria for triage in the field, involves a significant risk of death or the precipitation of complications or disabilities.*

Sec. 1.5.  NRS 41.505 is hereby amended to read as follows:

41.505  1.  Any physician or registered nurse who in good faith gives instruction or provides supervision to an emergency medical attendant or registered nurse, at the scene of an emergency or while transporting an ill or injured person from the scene of an emergency, is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, in giving that instruction or providing that supervision. An emergency medical attendant, registered nurse or licensed practical nurse who obeys an instruction given by a physician, registered nurse or licensed practical nurse and thereby renders emergency care, at the scene of an emergency or while transporting an ill or injured person from the scene of an emergency, is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, in rendering that emergency care.

2.  Except as otherwise provided in subsection 3, any person licensed under the provisions of chapter 630, 632 or 633 of NRS and any person who holds an equivalent license issued by another state, who renders emergency care or assistance in an emergency, gratuitously and in good faith, is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by him in rendering the emergency care or assistance or as a result of any failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured or ill person. This section does not excuse a physician or nurse from liability for damages resulting from his acts or omissions which occur in a licensed medical facility relative to any person with whom there is a preexisting relationship as a patient.

3.  Any person licensed under the provisions of chapter 630, 632 or 633 of NRS and any person who holds an equivalent license issued by another state who renders emergency obstetrical care or assistance to a pregnant woman during labor or the delivery of the child is not liable for any civil damages as a result of any act or omission by him in rendering that care or assistance if:

– 4 –

(a) The care or assistance is rendered in good faith and in a manner not amounting to gross negligence or reckless, willful or wanton conduct;

(b) The person has not previously provided prenatal or obstetrical care to the woman; and

(c) The damages are reasonably related to or primarily caused by a lack of prenatal care received by the woman.

A licensed medical facility in which such care or assistance is rendered is not liable for any civil damages as a result of any act or omission by the person in rendering that care or assistance if that person is not liable for any civil damages pursuant to this subsection and the actions of the medical facility relating to the rendering of that care or assistance do not amount to gross negligence or reckless, willful or wanton conduct.

4.  Any person licensed under the provisions of chapter 630, 632 or 633 of NRS and any person who holds an equivalent license issued by another state who:

(a) Is retired or otherwise does not practice on a full-time basis; and

(b) Gratuitously and in good faith, renders medical care within the scope of his license to an indigent person,

is not liable for any civil damages as a result of any act or omission by him, not amounting to gross negligence or reckless, willful or wanton conduct, in rendering that care.

5.  *Any person licensed to practice medicine under the provisions of chapter 630 or 633 of NRS or licensed to practice dentistry under the provisions of chapter 631 of NRS who renders care or assistance to a patient at a health care facility of a governmental entity or a nonprofit organization is not liable for any civil damages as a result of any act or omission by him in rendering that care or assistance if the care or assistance is rendered gratuitously, in good faith and in a manner not amounting to gross negligence or reckless, willful or wanton conduct.*

6.  As used in this section:

(a) "Emergency medical attendant" means a person licensed as an attendant or certified as an emergency medical technician, intermediate emergency medical technician or advanced emergency medical technician pursuant to chapter 450B of NRS.

(b) "Gratuitously" has the meaning ascribed to it in NRS 41.500.

(c) *"Health care facility" has the meaning ascribed to it in NRS 449.800.*

**Sec. 2.**  Chapter 41A of NRS is hereby amended by adding thereto the provisions set forth as sections 3 to 9, inclusive, of this act.

**Sec. 3.**  *"Economic damages" includes damages for medical treatment, care or custody, loss of earnings and loss of earning capacity.*

**Sec. 4.**  *"Noneconomic damages" includes damages to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damages.*

**Sec. 5.**  *1.  Except as otherwise provided in subsection 2 and except as further limited in subsection 3, in an action for damages for medical malpractice or dental malpractice, the noneconomic damages awarded to each plaintiff from each defendant must not exceed $350,000.*

*2.  In an action for damages for medical malpractice or dental malpractice, the limitation on noneconomic damages set forth in*

*subsection 1 does not apply in the following circumstances and types of cases:*

*(a) A case in which the conduct of the defendant is determined to constitute gross malpractice; or*

*(b) A case in which, following return of a verdict by the jury or a finding of damages in a bench trial, the court determines, by clear and convincing evidence admitted at trial, that an award in excess of $350,000 for noneconomic damages is justified because of exceptional circumstances.*

*3. Except as otherwise provided in subsection 4, in an action for damages for medical malpractice or dental malpractice, in the circumstances and types of cases described in subsections 1 and 2, the noneconomic damages awarded to each plaintiff from each defendant must not exceed the amount of money remaining under the professional liability insurance policy limit covering the defendant after subtracting the economic damages awarded to that plaintiff. Irrespective of the number of plaintiffs in the action, in no event may any single defendant be liable to the plaintiffs in the aggregate in excess of the professional liability insurance policy limit covering that defendant.*

*4. The limitation set forth in subsection 3 does not apply in an action for damages for medical malpractice or dental malpractice unless the defendant was covered by professional liability insurance at the time of the occurrence of the alleged malpractice and on the date on which the insurer receives notice of the claim, in an amount of:*

*(a) Not less than $1,000,000 per occurrence; and*

*(b) Not less than $3,000,000 in the aggregate.*

*5. This section is not intended to limit the responsibility of any defendant for the total economic damages awarded.*

*6. For the purposes of this section, "gross malpractice" means failure to exercise the required degree of care, skill or knowledge that amounts to:*

*(a) A conscious indifference to the consequences which may result from the gross malpractice; and*

*(b) A disregard for and indifference to the safety and welfare of the patient.*

**Sec. 6.** *1. In an action for damages for medical malpractice, each defendant is liable for noneconomic damages severally only, and not jointly, to the plaintiff only for that portion of the judgment which represents the percentage of negligence attributable to the defendant.*

*2. As used in this section, "medical malpractice" means the failure of a physician, hospital, employee of a hospital, certified nurse midwife or certified registered nurse anesthetist in rendering services to use the reasonable care, skill or knowledge ordinarily used under similar circumstances.*

**Sec. 7.** *1. Upon the motion of any party or upon its own motion, unless good cause is shown for the delay, the court shall, after due notice to the parties, dismiss an action involving medical malpractice or dental malpractice if the action is not brought to trial within:*

*(a) Three years after the date on which the action is filed, if the action is filed on or after October 1, 2002, but before October 1, 2005.*



– 6 –

*(b) Two years after the date on which the action is filed, if the action is filed on or after October 1, 2005.*

   *2. Dismissal of an action pursuant to subsection 1 is a bar to the filing of another action upon the same claim for relief against the same defendants.*

   *3. Each district court shall adopt court rules to expedite the resolution of an action involving medical malpractice or dental malpractice.*

   **Sec. 8.** *If an action for medical malpractice or dental malpractice is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.*

   **Sec. 9.** *1. In an action for medical malpractice or dental malpractice, all the parties to the action, the insurers of the respective parties and the attorneys of the respective parties shall attend and participate in a settlement conference before a district judge, other than the judge assigned to the action, to ascertain whether the action may be settled by the parties before trial.*

   *2. The judge before whom the settlement conference is held:*

   *(a) May, for good cause shown, waive the attendance of any party.*

   *(b) Shall decide what information the parties may submit at the settlement conference.*

   *3. The judge shall notify the parties of the time and place of the settlement conference.*

   *4. The failure of any party, his insurer or his attorney to participate in good faith in the settlement conference is grounds for sanctions against the party or his attorney, or both.*

   **Sec. 10.** NRS 41A.003 is hereby amended to read as follows:

   41A.003   As used in this chapter, unless the context otherwise requires, the words and terms defined in NRS 41A.004 [to 41A.012, inclusive,] , *41A.009 and 41A.013 and sections 3 and 4 of this act* have the meanings ascribed to them in those sections.

   **Sec. 11.** NRS 41A.097 is hereby amended to read as follows:

   41A.097   1. Except as otherwise provided in subsection [2,] *3,* an action for injury or death against a provider of health care may not be commenced more than 4 years after the date of injury or 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:

   (a) Injury to or the wrongful death of a person [,] *occurring before October 1, 2002,* based upon alleged professional negligence of the provider of health care;

   (b) Injury to or the wrongful death of a person *occurring before October 1, 2002,* from professional services rendered without consent; or

   (c) Injury to or the wrongful death of a person *occurring before October 1, 2002,* from error or omission in practice by the provider of health care.

   *2. Except as otherwise provided in subsection 3, an action for injury or death against a provider of health care may not be commenced more*

– 7 –

*than 3 years after the date of injury or 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:*

*(a) Injury to or the wrongful death of a person occurring on or after October 1, 2002, based upon alleged professional negligence of the provider of health care;*

*(b) Injury to or the wrongful death of a person occurring on or after October 1, 2002, from professional services rendered without consent; or*

*(c) Injury to or the wrongful death of a person occurring on or after October 1, 2002, from error or omission in practice by the provider of health care.*

3.   This time limitation is tolled [~~(a) For~~] *for* any period during which the provider of health care has concealed any act, error or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to him.

[~~(b) In any action governed by the provisions of NRS 41A.003 to 41A.069, inclusive, from the date a claimant files a complaint for review by a screening panel until 30 days after the date the panel notifies the claimant, in writing, of its findings. The provisions of this paragraph apply to an action against the provider of health care and to an action against any person, government or political subdivision of a government who is alleged by the claimant to be liable vicariously for the medical or dental malpractice of the provider of health care, if the provider, person, government or political subdivision has received notice of the filing of a complaint for review by a screening panel within the limitation of time provided in subsection 1.~~]

[~~3.~~] *4.*   For the purposes of this section, the parent, guardian or legal custodian of any minor child is responsible for exercising reasonable judgment in determining whether to prosecute any cause of action limited by subsection 1 [~~4~~] *or 2.* If the parent, guardian or custodian fails to commence an action on behalf of that child within the prescribed period of limitations, the child may not bring an action based on the same alleged injury against any provider of health care upon the removal of his disability, except that in the case of:

(a) Brain damage or birth defect, the period of limitation is extended until the child attains 10 years of age.

(b) Sterility, the period of limitation is extended until 2 years after the child discovers the injury.

[~~4.~~] *5.*   As used in this section, "provider of health care" means a physician licensed under chapter 630 or 633 of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, or a licensed hospital as the employer of any such person.

Sec. 12.   NRS 41A.100 is hereby amended to read as follows:

41A.100   1.   Liability for personal injury or death is not imposed upon any provider of medical care based on alleged negligence in the performance of that care unless evidence consisting of expert medical testimony, material from recognized medical texts or treatises or the

– 8 –

regulations of the licensed medical facility wherein the alleged negligence occurred is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death, except that such evidence is not required and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented that the personal injury or death occurred in any one or more of the following circumstances:

(a) A foreign substance other than medication or a prosthetic device was unintentionally left within the body of a patient following surgery;

(b) An explosion or fire originating in a substance used in treatment occurred in the course of treatment;

(c) An unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care;

(d) An injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto; or

(e) A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body.

2.  *Expert medical testimony provided pursuant to subsection 1 may only be given by a provider of medical care who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged negligence.*

3.  As used in this section, "provider of medical care" means a physician, dentist, registered nurse or a licensed hospital as the employer of any such person.

Sec. 13.   NRS 42.020 is hereby amended to read as follows:

42.020   1.   Except as otherwise provided in subsection 2, in any action for damages for medical malpractice, the amount of damages, if any, awarded in the action must be reduced by the amount of any prior payment made by or on behalf of the provider of health care against whom the action is brought to the injured person or to the claimant to meet reasonable expenses of medical care, other essential goods or services or reasonable living expenses.

2.   In any action described in subsection 1 in which liability for medical malpractice is established or admitted, the court shall, before the entry of judgment, hold a separate hearing to determine if any expenses incurred by the claimant for medical care, loss of income or other financial loss have been paid or reimbursed as a benefit from a collateral source. If the court determines that a claimant has received such a benefit, the court shall reduce the amount of damages, if any, awarded in the action by the amount of the benefit. The amount so reduced must not include any amount for which there is a right of subrogation to the rights of the claimant if the right of subrogation is exercised by serving a notice of lien on the claimant before the settlement of or the entry of judgment in the action. Notice of the action must be provided by the claimant to any statutory holder of a lien.

3.   If future economic damages are awarded in an action for medical malpractice, the [award must be paid, at the election of the claimant] *court may, at the request of the claimant, order the award to be paid:*

(a) In a lump sum which has been reduced to its present value as determined by the trier of fact and approved by the court; or

(b) Subject to the provisions of [subsection 5,] *subsections 5 and 6 and the discretion of the court, in periodic payments either* by an annuity purchased to provide periodic payments [,] *or by other means if the defendant posts an adequate bond or other security to ensure full payment by periodic payments of the damages awarded by the judgment.*

As used in this subsection, "future economic damages" includes damages for future medical treatment, care or custody, and loss of future earnings.

4.  If the claimant [elects to receive] *receives* periodic payments pursuant to paragraph (b) of subsection 3, the award must not be reduced to its present value. The amount of the periodic payments must be equal to the total amount of all future damages awarded by the trier of fact and approved by the court. The period for which the periodic payments must be made must be determined by the trier of fact and approved by the court. Before the entry of judgment, each party shall submit to the court a plan specifying the recipient of the payments, the amount of the payments and a schedule of periodic payments for the award. Upon receipt and review of the plans, the court shall specify in its judgment rendered in the action the recipient of the payments, the amount of the payments and a schedule of payments for the award.

5.  If an annuity is purchased pursuant to paragraph (b) of subsection 3, the claimant shall select the provider of the annuity. Upon purchase of the annuity, the claimant shall:

(a) Execute a satisfaction of judgment or a stipulation for dismissal of the claim with prejudice; and

(b) Release forever the defendant and his insurer, if any, from any obligation to make periodic payments pursuant to the award.

6.  *If the defendant posts a bond or other security pursuant to paragraph (b) of subsection 3, upon termination of the payment of periodic payments of damages, the court shall order the return of the bond or other security, or as much as remains, to the defendant.*

7.  As used in this section:

(a) "Benefit from a collateral source" means any money, service or other benefit which is paid or provided or is reasonably likely to be paid or provided to a claimant for personal injury or wrongful death pursuant to:

(1) A state or federal act which provides benefits for sickness, disability, accidents, loss of income or workers' compensation;

(2) A policy of insurance which provides health benefits or coverage for loss of income;

(3) A contract of any group, organization, partnership or corporation which provides, pays or reimburses the cost of medical, hospital or dental benefits or benefits for loss of income; or

(4) Any other publicly or privately funded program which provides such benefits.

(b) "Medical malpractice" has the meaning ascribed to it in NRS 41A.009.

**Sec. 14.**  NRS 1.360 is hereby amended to read as follows:

1.360   Under the direction of the supreme court, the court administrator shall:

1.  Examine the administrative procedures employed in the offices of the judges, clerks, court reporters and employees of all courts of this state and make recommendations, through the chief justice, for the improvement of those procedures;

2.  Examine the condition of the dockets of the courts and determine the need for assistance by any court;

3.  Make recommendations to and carry out the directions of the chief justice relating to the assignment of district judges where district courts are in need of assistance;

4.  Develop a uniform system for collecting and compiling statistics and other data regarding the operation of the state court system and transmit that information to the supreme court so that proper action may be taken in respect thereto;

5.  Prepare and submit a budget of state appropriations necessary for the maintenance and operation of the state court system and make recommendations in respect thereto;

6.  Develop procedures for accounting, internal auditing, procurement and disbursement for the state court system;

7.  Collect statistical and other data and make reports relating to the expenditure of all public money for the maintenance and operation of the state court system and the offices connected therewith;

8.  Compile statistics from the information required to be maintained by the clerks of the district courts pursuant to NRS 3.275 and make reports as to the cases filed in the district courts;

9.  Formulate and submit to the supreme court recommendations of policies or proposed legislation for the improvement of the state court system;

10.  On or before January 1 of each year, submit to the director of the legislative counsel bureau a written report compiling the information submitted to the court administrator pursuant to NRS 3.243, 4.175 and 5.045 during the immediately preceding fiscal year; [and]

11.  *On or before February 15 of each odd-numbered year, submit to the governor and to the director of the legislative counsel bureau for transmittal to the next regular session of the legislature a written report compiling the information submitted by clerks of courts to the court administrator pursuant to NRS 630.307 and section 64 of this act which includes only aggregate information for statistical purposes and excludes any identifying information related to a particular person; and*

12.  Attend to such other matters as may be assigned by the supreme court or prescribed by law.

**Sec. 15.**  Chapter 3 of NRS is hereby amended by adding thereto a new section to read as follows:

*The supreme court shall provide by court rule for mandatory appropriate training concerning the complex issues of medical malpractice litigation for each district judge to whom actions involving medical malpractice are assigned. .*

– 11 –

**Sec. 16.**  NRS 7.085 is hereby amended to read as follows:

7.085   If a court finds that an attorney has:

1.   Filed, maintained or defended a civil action or proceeding in any court in this state and such action or defense is not well-grounded in fact or is not warranted by existing law or by an argument for changing the existing law that is made in good faith; or

2.   Unreasonably and vexatiously extended a civil action or proceeding before any court in this state,

the court [may] *shall* require the attorney personally to pay the additional costs, expenses and attorney's fees reasonably incurred because of such conduct.

**Sec. 17.**  NRS 49.245 is hereby amended to read as follows:

49.245   There is no privilege under NRS 49.225 or 49.235:

1.   For communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the doctor in the course of diagnosis or treatment has determined that the patient is in need of hospitalization.

2.   As to communications made in the course of a court-ordered examination of the condition of a patient with respect to the particular purpose of the examination unless the court orders otherwise.

3.   As to written medical or hospital records relevant to an issue of the condition of the patient in any proceeding in which the condition is an element of a claim or defense.

4.   In a prosecution or mandamus proceeding under chapter 441A of NRS.

5.   As to any information communicated to a physician in an effort unlawfully to procure a dangerous drug or controlled substance, or unlawfully to procure the administration of any such drug or substance.

6.   As to any written medical or hospital records which are furnished in accordance with the provisions of NRS 629.061.

7.   As to records that are required by chapter 453 of NRS to be maintained.

8.   [In a review before a screening panel pursuant to NRS 41A.003 to 41A.069, inclusive.

— 9.]  If the services of the physician are sought or obtained to enable or aid a person to commit or plan to commit fraud or any other unlawful act in violation of any provision of chapter 616A, 616B, 616C, 616D or 617 of NRS which the person knows or reasonably should know is fraudulent or otherwise unlawful.

**Sec. 18.**  Chapter 439 of NRS is hereby amended by adding thereto the provisions set forth as sections 19 to 39, inclusive, of this act.

**Sec. 19.**  *As used in sections 19 to 39, inclusive, of this act, unless the context otherwise requires, the words and terms defined in sections 20 to 25, inclusive, of this act have the meanings ascribed to them in those sections.*

**Sec. 20.**  *"Medical facility" means:*

*1.   A hospital, as that term is defined in NRS 449.012 and 449.0151;*

*2.   An obstetric center, as that term is defined in NRS 449.0151 and 449.0155;*

3. A surgical center for ambulatory patients, as that term is defined in NRS 449.0151 and 449.019; and

4. An independent center for emergency medical care, as that term is defined NRS 449.013 and 449.0151.

Sec. 21. "Patient" means a person who:

1. Is admitted to a medical facility for the purpose of receiving treatment;

2. Resides in a medical facility; or

3. Receives treatment from a provider of health care.

Sec. 22. "Patient safety officer" means a person who is designated as such by a medical facility pursuant to section 35 of this act.

Sec. 23. "Provider of health care" means a person who is licensed, certified or otherwise authorized by the law of this state to administer health care in the ordinary course of the business or practice of a profession.

Sec. 24. "Repository" means the repository for health care quality assurance created by section 31 of this act.

Sec. 25. "Sentinel event" means an unexpected occurrence involving death or serious physical or psychological injury or the risk thereof, including, without limitation, any process variation for which a recurrence would carry a significant chance of a serious adverse outcome. The term includes loss of limb or function.

Secs. 26 and 27.   (Deleted by amendment.)

Sec. 28.   1.   Except as otherwise provided in subsection 2:

(a) A person who is employed by a medical facility shall, within 24 hours after becoming aware of a sentinel event that occurred at the medical facility, notify the patient safety officer of the facility of the sentinel event; and

(b) The patient safety officer shall, within 13 days after receiving notification pursuant to paragraph (a), report the date, the time and a brief description of the sentinel event to:

(1) The health division; and

(2) The representative designated pursuant to section 32 of this act, if that person is different from the patient safety officer.

2.   If the patient safety officer of a medical facility personally discovers or becomes aware, in the absence of notification by another employee, of a sentinel event that occurred at the medical facility, the patient safety officer shall, within 14 days after discovering or becoming aware of the sentinel event, report the date, time and brief description of the sentinel event to:

(a) The health division; and

(b) The representative designated pursuant to section 32 of this act, if that person is different from the patient safety officer.

3.   The administrator shall prescribe the manner in which reports of sentinel events must be made pursuant to this section.

Sec. 29.   1.   The health division shall, to the extent of legislative appropriation and authorization:

(a) Collect and maintain reports received pursuant to section 28 of this act; and

– 13 –

(b) *Ensure that such reports, and any additional documents created from such reports, are protected adequately from fire, theft, loss, destruction and other hazards and from unauthorized access.*

2. *Reports received pursuant to section 28 of this act are confidential, not subject to subpoena or discovery and not subject to inspection by the general public.*

Sec. 30. *1. The health division shall, to the extent of legislative appropriation and authorization, contract with a quality improvement organization, as defined in 42 C.F.R. § 400.200, to analyze and report trends regarding sentinel events.*

2. *When the health division receives notice from a medical facility that the medical facility has taken corrective action to remedy the causes or contributing factors, or both, of a sentinel event, the health division shall:*

(a) *Make a record of the information;*

(b) *Ensure that the information is aggregated so as not to reveal the identity of a specific person or medical facility; and*

(c) *Transmit the information to a quality improvement organization.*

3. *A quality improvement organization to whom information is transmitted pursuant to subsection 2 shall, at least quarterly, report its findings regarding the analysis of aggregated trends of sentinel events to the repository for health care quality assurance.*

Sec. 31. *1. The repository for health care quality assurance is hereby created within the health division.*

2. *The repository shall, to the extent of legislative appropriation and authorization, function as a clearinghouse of information relating to aggregated trends of sentinel events.*

Sec. 32. *1. Each medical facility that is located within this state shall designate a representative for the notification of patients who have been involved in sentinel events at that medical facility.*

2. *A representative designated pursuant to subsection 1 shall, not later than 7 days after discovering or becoming aware of a sentinel event that occurred at the medical facility, provide notice of that fact to each patient who was involved in that sentinel event.*

3. *The provision of notice to a patient pursuant to subsection 2 must not, in any action or proceeding, be considered an acknowledgment or admission of liability.*

4. *A representative designated pursuant to subsection 1 may or may not be the same person who serves as the facility's patient safety officer.*

Sec. 33. *Any report, document and any other information compiled or disseminated pursuant to the provisions of sections 19 to 39, inclusive, of this act is not admissible in evidence in any administrative or legal proceeding conducted in this state.*

Sec. 34. *1. Each medical facility that is located within this state shall develop, in consultation with the providers of health care who provide treatment to patients at the medical facility, an internal patient safety plan to improve the health and safety of patients who are treated at that medical facility.*

- 14 -

2. A medical facility shall submit its patient safety plan to the governing board of the medical facility for approval in accordance with the requirements of this section.

3. After a medical facility's patient safety plan is approved, the medical facility shall notify all providers of health care who provide treatment to patients at the medical facility of the existence of the plan and of the requirements of the plan. A medical facility shall require compliance with its patient safety plan.

Sec. 35. 1. A medical facility shall designate an officer or employee of the facility to serve as the patient safety officer of the medical facility.

2. The person who is designated as the patient safety officer of a medical facility shall:

(a) Serve on the patient safety committee.

(b) Supervise the reporting of all sentinel events alleged to have occurred at the medical facility, including, without limitation, performing the duties required pursuant to section 28 of this act.

(c) Take such action as he determines to be necessary to ensure the safety of patients as a result of an investigation of any sentinel event alleged to have occurred at the medical facility.

(d) Report to the patient safety committee regarding any action taken in accordance with paragraph (c).

Sec. 36. 1. A medical facility shall establish a patient safety committee.

2. Except as otherwise provided in subsection 3:

(a) A patient safety committee established pursuant to subsection 1 must be composed of:

(1) The patient safety officer of the medical facility.

(2) At least three providers of health care who treat patients at the medical facility, including, without limitation, at least one member of the medical, nursing and pharmaceutical staff of the medical facility.

(3) One member of the executive or governing body of the medical facility.

(b) A patient safety committee shall meet at least once each month.

3. The administrator shall adopt regulations prescribing the composition and frequency of meetings of patient safety committees at medical facilities having fewer than 25 employees and contractors.

4. A patient safety committee shall:

(a) Receive reports from the patient safety officer pursuant to section 35 of this act.

(b) Evaluate actions of the patient safety officer in connection with all reports of sentinel events alleged to have occurred at the medical facility.

(c) Review and evaluate the quality of measures carried out by the medical facility to improve the safety of patients who receive treatment at the medical facility.

(d) Make recommendations to the executive or governing body of the medical facility to reduce the number and severity of sentinel events that occur at the medical facility.

(e) At least once each calendar quarter, report to the executive or governing body of the medical facility regarding:

– 15 –

*(1) The number of sentinel events that occurred at the medical facility during the preceding calendar quarter; and*

*(2) Any recommendations to reduce the number and severity of sentinel events that occur at the medical facility.*

*5. The proceedings and records of a patient safety committee are subject to the same privilege and protection from discovery as the proceedings and records described in NRS 49.265.*

Sec. 37. *No person is subject to any criminal penalty or civil liability for libel, slander or any similar cause of action in tort if he, without malice:*

*1. Reports a sentinel event to a governmental entity with jurisdiction or another appropriate authority;*

*2. Notifies a governmental entity with jurisdiction or another appropriate authority of a sentinel event;*

*3. Transmits information regarding a sentinel event to a governmental entity with jurisdiction or another appropriate authority;*

*4. Compiles, prepares or disseminates information regarding a sentinel event to a governmental entity with jurisdiction or another appropriate authority; or*

*5. Performs any other act authorized pursuant to sections 19 to 39, inclusive, of this act.*

Sec. 38. *If a medical facility:*

*1. Commits a violation of any provision of sections 19 to 39, inclusive, of this act or for any violation for which an administrative sanction pursuant to NRS 449.163 would otherwise be applicable; and*

*2. Of its own volition, reports the violation to the administrator,*

*such a violation must not be used as the basis for imposing an administrative sanction pursuant to NRS 449.163.*

Sec. 39. *The administrator shall adopt such regulations as the administrator determines to be necessary or advisable to carry out the provisions of sections 19 to 39, inclusive, of this act.*

Secs. 40-43. (Deleted by amendment.)

Sec. 44. Chapter 449 of NRS is hereby amended by adding thereto the provisions set forth as sections 45 and 46 of this act.

Sec. 45. *1. A medical facility or any agent or employee thereof shall not retaliate or discriminate unfairly against an employee of the medical facility or a person acting on behalf of the employee who in good faith:*

*(a) Reports to the board of medical examiners or the state board of osteopathic medicine, as applicable, information relating to the conduct of a physician which may constitute grounds for initiating disciplinary action against the physician or which otherwise raises a reasonable question regarding the competence of the physician to practice medicine with reasonable skill and safety to patients;*

*(b) Reports a sentinel event to the health division pursuant to section 28 of this act; or*

*(c) Cooperates or otherwise participates in an investigation or proceeding conducted by the board of medical examiners, the state board*

– 16 –

of osteopathic medicine or another governmental entity relating to conduct described in paragraph (a) or (b).

2.  A medical facility or any agent or employee thereof shall not retaliate or discriminate unfairly against an employee of the medical facility because the employee has taken an action described in subsection 1.

3.  A medical facility or any agent or employee thereof shall not prohibit, restrict or attempt to prohibit or restrict by contract, policy, procedure or any other manner the right of an employee of the medical facility to take an action described in subsection 1.

4.  As used in this section:

(a) "Physician" means a person licensed to practice medicine pursuant to chapter 630 or 633 of NRS.

(b) "Retaliate or discriminate":

(1) Includes, without limitation, the following action if such action is taken solely because the employee took an action described in subsection 1:

(I) Frequent or undesirable changes in the location where the employee works;

(II) Frequent or undesirable transfers or reassignments;

(III) The issuance of letters of reprimand, letters of admonition or evaluations of poor performance;

(IV) A demotion;

(V) A reduction in pay;

(VI) The denial of a promotion;

(VII) A suspension;

(VIII) A dismissal;

(IX) A transfer; or

(X) Frequent changes in working hours or workdays.

(2) Does not include action described in subparagraphs (I) to (X), inclusive, of paragraph (1) if the action is taken in the normal course of employment or as a form of discipline.

Sec. 46.  An employee of a medical facility who believes that he has been retaliated or discriminated against in violation of section 45 of this act may file an action in a court of competent jurisdiction for such relief as may be appropriate under the law.

Sec. 47.  Chapter 630 of NRS is hereby amended by adding thereto the provisions set forth as sections 48 and 49 of this act.

Sec. 48.  1.  A physician or any agent or employee thereof shall not retaliate or discriminate unfairly against an employee of the physician or a person acting on behalf of the employee who in good faith:

(a) Reports to the board information relating to the conduct of the physician which may constitute grounds for initiating disciplinary action against the physician or which otherwise raises a reasonable question regarding the competence of the physician to practice medicine with reasonable skill and safety to patients;

(b) Reports a sentinel event to the health division pursuant to section 28 of this act; or

– 17 –

(c) *Cooperates or otherwise participates in an investigation or proceeding conducted by the board or another governmental entity relating to conduct described in paragraph (a) or (b).*

2. *A physician or any agent or employee thereof shall not retaliate or discriminate unfairly against an employee of the physician because the employee has taken an action described in subsection 1.*

3. *A physician or any agent or employee thereof shall not prohibit, restrict or attempt to prohibit or restrict by contract, policy, procedure or any other manner the right of an employee of the physician to take an action described in subsection 1.*

4. *As used in this section, "retaliate or discriminate":*

(a) *Includes, without limitation, the following action if such action is taken solely because the employee took an action described in subsection 1:*

(1) *Frequent or undesirable changes in the location where the employee works;*

(2) *Frequent or undesirable transfers or reassignments;*

(3) *The issuance of letters of reprimand, letters of admonition or evaluations of poor performance;*

(4) *A demotion;*

(5) *A reduction in pay;*

(6) *The denial of a promotion;*

(7) *A suspension;*

(8) *A dismissal;*

(9) *A transfer; or*

(10) *Frequent changes in working hours or workdays.*

(b) *Does not include action described in paragraphs (1) to (10), inclusive, of paragraph (a) if the action is taken in the normal course of employment or as a form of discipline.*

Sec. 49.   *An employee of a physician who believes that he has been retaliated or discriminated against in violation of section 48 of this act may file an action in a court of competent jurisdiction for such relief as may be appropriate.*

Sec. 50.   (Deleted by amendment.)

Sec. 51.   NRS 630.130 is hereby amended to read as follows:

630.130   1.   In addition to the other powers and duties provided in this chapter, the board shall:

(a) Enforce the provisions of this chapter;

(b) Establish by regulation standards for licensure under this chapter;

(c) Conduct examinations for licensure and establish a system of scoring for those examinations;

(d) Investigate the character of each applicant for a license and issue licenses to those applicants who meet the qualifications set by this chapter and the board; and

(e) Institute a proceeding in any court to enforce its orders or the provisions of this chapter.

2.   *On or before February 15 of each odd-numbered year, the board shall submit to the governor and to the director of the legislative counsel bureau for transmittal to the next regular session of the legislature a written report compiling:*

_18_

*(a) Disciplinary action taken by the board during the previous biennium against physicians for malpractice or negligence; and*

*(b) Information reported to the board during the previous biennium pursuant to NRS 630.3067, subsections 2 and 3 of NRS 630.307 and NRS 690B.045.*

*The report must include only aggregate information for statistical purposes and exclude any identifying information related to a particular person.*

3.    The board may adopt such regulations as are necessary or desirable__ to enable it to carry out the provisions of this chapter.

Sec. 52.   NRS 630.267 is hereby amended to read as follows:

630.267   1.   Each holder of a license to practice medicine must, on or before July 1 of each alternate year:

(a)  Submit the statement required pursuant to NRS 630.197; [and]

*(b)  Submit a list of all actions filed or claims submitted to arbitration or mediation for malpractice or negligence against him during the previous 2 years; and*

*(c)* Pay to the secretary-treasurer of the board the applicable fee for biennial registration. This fee must be collected for the period for which a physician is licensed.

2.    When a holder of a license fails to pay the fee for biennial registration and submit the statement required pursuant to NRS 630.197 after they become due, his license to practice medicine in this state is automatically suspended. The holder may, within 2 years after the date his license is suspended, upon payment of twice the amount of the current fee for biennial registration to the secretary-treasurer and submission of the statement required pursuant to NRS 630.197 and after he is found to be in good standing and qualified under the provisions of this chapter, be reinstated to practice.

3.    The board shall make such reasonable attempts as are practicable to notify a licensee:

(a)  At least once that his fee for biennial registration and the statement required pursuant to NRS 630.197 are due; and

(b)  That his license is suspended.

A copy of this notice must be sent to the Drug Enforcement Administration of the United States Department of Justice or its successor agency.

Sec. 53.   NRS 630.3062 is hereby amended to read as follows:

630.3062   The following acts, among others, constitute grounds for initiating disciplinary action or denying licensure:

1.    Failure to maintain timely, legible, accurate and complete medical records relating to the diagnosis, treatment and care of a patient.

2.    Altering medical records of a patient.

3.    Making or filing a report which the licensee knows to be false, failing to file a record or report as required by law or willfully obstructing or inducing another to obstruct such filing.

4.    Failure to make the medical records of a patient available for inspection and copying as provided in NRS 629.061.

5.    Failure to [report any claim for malpractice or negligence filed against the licensee and the subsequent disposition thereof within 40 days after the]

– 19 –

~~(a) Claim is filed; and~~

~~(b) Disposition of the claim.]~~ comply with the requirements of NRS 630.3067.

6.  Failure to report any person the licensee knows, or has reason to know, is in violation of the provisions of this chapter or the regulations of the board.

Sec. 54.  NRS 630.3067 is hereby amended to read as follows:

630.3067  ~~[Under the provisions of NRS 690B.045, the]~~

1.  *The insurer of a physician licensed under this chapter and the physician must report to the board any action filed or* claim *submitted to arbitration or mediation* for malpractice or negligence *against the physician* and the settlement, award, judgment or other disposition ~~[thereof.]~~ *of the action or claim within 30 days after:*

*(a) The action was filed or the claim was submitted to arbitration or mediation; and*

*(b) The disposition of the action or claim.*

*2.  The board shall report any failure to comply with subsection 1 by an insurer licensed in this state to the division of insurance of the department of business and industry. If, after a hearing, the division of insurance determines that any such insurer failed to comply with the requirements of subsection 1, the division may impose an administrative fine of not more than $10,000 against the insurer for each such failure to report. If the administrative fine is not paid when due, the fine must be recovered in a civil action brought by the attorney general on behalf of the division.*

Sec. 55.  NRS 630.307 is hereby amended to read as follows:

630.307  1.  Any person, medical school or medical facility that becomes aware that a person practicing medicine or respiratory care in this state has, is or is about to become engaged in conduct which constitutes grounds for initiating disciplinary action shall ~~[forthwith]~~ file a written complaint with the board ~~[.]~~ *within 30 days after becoming aware of the conduct.*

2.  Any hospital, clinic or other medical facility licensed in this state, or medical society, shall ~~[forthwith]~~ report to the board any change in a physician's privileges to practice medicine while the physician is under investigation and the outcome of any disciplinary action taken by that facility or society against the physician concerning the care of a patient or the competency of the physician ~~[.]~~ *within 30 days after the change in privileges is made or disciplinary action is taken. The board shall report any failure to comply with this subsection by a hospital, clinic or other medical facility licensed in this state to the health division of the department of human resources. If, after a hearing, the health division determines that any such facility or society failed to comply with the requirements of this subsection, the division may impose an administrative fine of not more than $10,000 against the facility or society for each such failure to report. If the administrative fine is not paid when due, the fine must be recovered in a civil action brought by the attorney general on behalf of the division.*

3.  The clerk of every court shall [forthwith] report to the board any finding, judgment or other determination of the court that a physician, physician assistant or practitioner of respiratory care:

(a)  Is mentally ill;

(b)  Is mentally incompetent;

(c)  Has been convicted of a felony or any law governing controlled substances or dangerous drugs;

(d)  Is guilty of abuse or fraud under any state or federal program providing medical assistance; or

(e)  Is liable [for] damages for malpractice or negligence [.] ,

*within 45 days after such a finding, judgment or determination is made.*

*4.   On or before January 15 of each year, the clerk of each court shall submit to the office of court administrator created pursuant to NRS 1.320 a written report compiling the information that the clerk reported during the previous year to the board regarding physicians pursuant to paragraph (e) of subsection 3.*

Sec.  56.   NRS 630.364 is hereby amended to read as follows:

630.364   1.   Any person or organization who furnishes information concerning an applicant for a license or a licensee in good faith and without malicious intent in accordance with the provisions of this chapter is immune from any civil action for furnishing that information.

2.   The board and any of its members and its staff, counsel, investigators, experts, committees, panels, hearing officers and consultants are immune from any civil liability for:

(a)  Any decision or action taken in good faith and without malicious intent in response to information acquired by the board.

(b)  Disseminating information concerning an applicant for a license or a licensee to other boards or agencies of the state, the attorney general, any hospitals, medical societies, insurers, employers, patients and their families or any law enforcement agency.

[3.   A screening panel or any of its members, acting pursuant to NRS 41A.003 to 41A.069, inclusive, that initiates or assists in any proceeding concerning a claim of malpractice against a physician is immune from any civil action for that initiation or assistance or any consequential damages, if the panel or members acted without malicious intent.]

Sec.  57.   (Deleted by amendment.)

Sec.  58.   Chapter 633 of NRS is hereby amended by adding thereto the provisions set forth as sections 62, 63 and 64 of this act.

Sec.  59.   *1.   An osteopathic physician or any agent or employee thereof shall not retaliate or discriminate unfairly against an employee of the osteopathic physician or a person acting on behalf of the employee who in good faith:*

*(a)  Reports to the board information relating to the conduct of the osteopathic physician which may constitute grounds for initiating disciplinary action against the osteopathic physician or which otherwise raises a reasonable question regarding the competence of the osteopathic physician to practice medicine with reasonable skill and safety to patients;*

*(b)  Reports a sentinel event to the health division pursuant to section 28 of this act; or*

– 21 –

(c) Cooperates or otherwise participates in an investigation or proceeding conducted by the board or another governmental entity relating to conduct described in paragraph (a) or (b).

2. An osteopathic physician or any agent or employee thereof shall not retaliate or discriminate unfairly against an employee of the osteopathic physician because the employee has taken an action described in subsection 1.

3. An osteopathic physician or any agent or employee thereof shall not prohibit, restrict or attempt to prohibit or restrict by contract, policy, procedure or any other manner the right of an employee of the osteopathic physician to take an action described in subsection 1.

4. As used in this section, "retaliate or discriminate":

(a) Includes, without limitation, the following action if such action is taken solely because the employee took an action described in subsection 1:

(1) Frequent or undesirable changes in the location where the employee works;

(2) Frequent or undesirable transfers or reassignments;

(3) The issuance of letters of reprimand, letters of admonition or evaluations of poor performance;

(4) A demotion;

(5) A reduction in pay;

(6) The denial of a promotion;

(7) A suspension;

(8) A dismissal;

(9) A transfer; or

(10) Frequent changes in working hours or workdays.

(b) Does not include action described in paragraphs (1) to (10), inclusive, of paragraph (a) if the action is taken in the normal course of employment or as a form of discipline.

Sec. 60. An employee of an osteopathic physician who believes that he has been retaliated or discriminated against in violation of section 59 of this act may file an action in a court of competent jurisdiction for such relief as may be appropriate under the law.

Sec. 61. (Deleted by amendment.)

Sec. 62. 1. On or before February 15 of each odd-numbered year, the board shall submit to the governor and to the director of the legislative counsel bureau for transmittal to the next regular session of the legislature a written report compiling:

(a) Disciplinary action taken by the board during the previous biennium against osteopathic physicians for malpractice or negligence; and

(b) Information reported to the board during the previous biennium pursuant to NRS 690B.045, section 63 of this act and subsections 2 and 3 of section 64 of this act.

2. The report must include only aggregate information for statistical purposes and exclude any identifying information related to a particular person.

Sec. 63. 1. The insurer of an osteopathic physician licensed under this chapter and the osteopathic physician must report to the board any

– 22 –

*action filed or claim submitted to arbitration or mediation for malpractice or negligence against the osteopathic physician and the settlement, award, judgment or other disposition of the action or claim within 30 days after:*

*(a) The action was filed or the claim was submitted to arbitration or mediation; and*

*(b) The disposition of the action or claim.*

2.   *The board shall report any failure to comply with subsection 1 by an insurer licensed in this state to the division of insurance of the department of business and industry. If, after a hearing, the division of insurance determines that any such insurer failed to comply with the requirements of subsection 1, the division may impose an administrative fine of not more than $10,000 against the insurer for each such failure to report. If the administrative fine is not paid when due, the fine must be recovered in a civil action brought by the attorney general on behalf of the division.*

Sec. 64.   1.   *Any person, medical school or medical facility that becomes aware that a person practicing osteopathic medicine in this state has, is or is about to become engaged in conduct which constitutes grounds for initiating disciplinary action shall file a written complaint with the board within 30 days after becoming aware of the conduct.*

2.   *Any hospital, clinic or other medical facility licensed in this state, or medical society, shall report to the board any change in an osteopathic physician's privileges to practice osteopathic medicine while the osteopathic physician is under investigation and the outcome of any disciplinary action taken by that facility or society against the osteopathic physician concerning the care of a patient or the competency of the osteopathic physician within 30 days after the change in privileges is made or disciplinary action is taken. The board shall report any failure to comply with this subsection by a hospital, clinic or other medical facility licensed in this state to the health division of the department of human resources. If, after a hearing, the health division determines that any such facility or society failed to comply with the requirements of this subsection, the division may impose an administrative fine of not more than $10,000 against the facility or society for each such failure to report. If the administrative fine is not paid when due, the fine must be recovered in a civil action brought by the attorney general on behalf of the division.*

3.   *The clerk of every court shall report to the board any finding, judgment or other determination of the court that an osteopathic physician or osteopathic physician's assistant:*

*(a) Is mentally ill;*

*(b) Is mentally incompetent;*

*(c) Has been convicted of a felony or any law governing controlled substances or dangerous drugs;*

*(d) Is guilty of abuse or fraud under any state or federal program providing medical assistance; or*

*(e) Is liable for damages for malpractice or negligence,*

*within 45 days after such a finding, judgment or determination is made.*

– 23 –

4.  *On or before January 15 of each year, the clerk of every court shall submit to the office of court administrator created pursuant to NRS 1.320 a written report compiling the information that the clerk reported during the previous year to the board regarding osteopathic physicians pursuant to paragraph (e) of subsection 3.*

**Sec. 65.**   NRS 633.471 is hereby amended to read as follows:

633.471   1.   Except as otherwise provided in subsection 3 and in NRS 633.491, every holder of a license issued under this chapter, except a temporary or a special license, may renew his license on or before January 1 of each calendar year after its issuance by:

(a)  Applying for renewal on forms provided by the board;

(b)  Submitting the statement required pursuant to NRS 633.326;

(c)  Paying the annual license renewal fee specified in this chapter; [and]

(d)  *Submitting a list of all actions filed or claims submitted to arbitration or mediation for malpractice or negligence against him during the previous year; and*

(e)  Submitting verified evidence satisfactory to the board that in the year preceding the application for renewal he has attended courses or programs of continuing education approved by the board totaling a number of hours established by the board which must not be less than 35 hours nor more than that set in the requirements for continuing medical education of the American Osteopathic Association.

2.   The secretary of the board shall notify each licensee of the requirements for renewal not less than 30 days before the date of renewal.

3.   Members of the Armed Forces of the United States and the United States Public Health Service are exempt from payment of the annual license renewal fee during their active duty status.

**Sec. 66.**   NRS 633.511 is hereby amended to read as follows:

633.511   The grounds for initiating disciplinary action pursuant to this chapter are:

1.   Unprofessional conduct.

2.   Conviction of:

(a)  A violation of any federal or state law regulating the possession, distribution or use of any controlled substance or any dangerous drug as defined in chapter 454 of NRS;

(b)  A felony;

(c)  A violation of any of the provisions of NRS 616D.200, 616D.220, 616D.240 or 616D.300 to 616D.440, inclusive; or

(d)  Any offense involving moral turpitude.

3.   The suspension of the license to practice osteopathic medicine by any other jurisdiction.

4.   Gross or repeated malpractice, which may be evidenced by claims of malpractice settled against a practitioner.

5.   Professional incompetence.

6.   *Failure to comply with the requirements of section 63 of this act.*

**Sec. 67.**   NRS 690B.045 is hereby amended to read as follows:

690B.045   Except as more is required in NRS 630:3067 [:] *and section 63 of this act:*

1.   Each insurer which issues a policy of insurance covering the liability of a practitioner licensed pursuant to chapters 630 to 640,

– 24 –

inclusive, of NRS for a breach of his professional duty toward a patient shall report to the board which licensed the practitioner within 30 days each settlement or award made or judgment rendered by reason of a claim, if the settlement, award or judgment is for more than $5,000, giving the name and address of the claimant and the practitioner and the circumstances of the case.

2.   A practitioner licensed pursuant to chapters 630 to 640, inclusive, of NRS who does not have insurance covering liability for a breach of his professional duty toward a patient shall report to the board which issued his license within 30 days of each settlement or award made or judgment rendered by reason of a claim, if the settlement, award or judgment is for more than $5,000, giving his name and address, the name and address of the claimant and the circumstances of the case.

3.   These reports are public records and must be made available for public inspection within a reasonable time after they are received by the licensing board.

Sec. 68.   NRS 690B.050 is hereby amended to read as follows:

690B.050   1.   Each insurer which issues a policy of insurance covering the liability of a physician licensed under chapter 630 of NRS *or an osteopathic physician licensed under chapter 633 of NRS* for a breach of his professional duty toward a patient shall report to the commissioner within 30 days each settlement or award made or judgment rendered by reason of a claim, giving the name and address of the claimant and physician and the circumstances of the case.

2.   The commissioner shall report to the board of medical examiners [,] *or the state board of osteopathic medicine, as applicable,* within 30 days after receiving the report of the insurer, each claim made and each settlement, award or judgment.

Sec. 69.   NRS 41A.0043, 41A.005, 41A.008, 41A.016, 41A.019, 41A.023, 41A.024, 41A.026, 41A.029, 41A.033, 41A.036, 41A.039, 41A.043, 41A.046, 41A.049, 41A.051, 41A.053, 41A.056, 41A.059, 41A.069 and 631.377 are hereby repealed.

Sec. 70.   The amendatory provisions of sections 1 to 6, inclusive, and 11 of this act apply only to a cause of action that accrues on or after October 1, 2002.

Sec. 71.   The amendatory provisions of sections 7, 8, 12 and 17 apply only to an action filed on or after October 1, 2002.

Sec. 72.   1.   Notwithstanding the repeal of NRS 41A.0043, 41A.005, 41A.008 and 41A.016 to 41A.069, inclusive, if a claimant has filed a complaint with the division of insurance of the department of business and industry pursuant to NRS 41A.039 before October 1, 2002, and a determination has not been made by the screening panel as provided in NRS 41A.003 to 41A.069, inclusive, before October 1, 2002, the claimant may elect:

(a) To have a determination made by the screening panel as provided in NRS 41A.003 to 41A.069, inclusive. If the claimant elects to have a determination made by the screening panel, the provisions of NRS 41A.003 to 41A.069, inclusive, shall be deemed to continue to apply to the claim and to any subsequent action filed in the district court. If the claimant wishes to elect to have a determination made by the screening panel, the

claimant must, before December 1, 2002, file written notice of that fact with the division. If the claimant fails to provide such written notice, the claimant shall be deemed to have elected to have no further action taken by the screening panel concerning the complaint.

(b) To have no further action taken by the screening panel concerning the complaint. If the claimant elects to have no further action taken by the screening panel concerning the complaint, the division and the screening panel shall not take any further action with respect to the complaint, and the claimant may file an action in the district court.

2. Notwithstanding the repeal of NRS 41A.0043, 41A.005, 41A.008 and 41A.016 to 41A.069, inclusive, and the amendment of paragraph (b) of subsection 2 of NRS 41A.097, if a claimant elects:

(a) To have a determination made by the screening panel, the tolling of the time limitation provided for review of the complaint by the screening panel pursuant to NRS 41A.097 shall be deemed to continue to apply until 30 days after the date on which the screening panel notifies the claimant, in writing, of its findings.

(b) To have no further action taken by the screening panel concerning the complaint, the tolling of the time limitation provided for review of the complaint by the screening panel pursuant to NRS 41A.097 ceases on December 1, 2002.

3. If a claimant:

(a) Elects to have no further action taken by the screening panel concerning the complaint;

(b) Files an action in the district court; and

(c) Prevails at the trial of the action,

the claimant is entitled to tax, as costs, the fee paid to the division pursuant to NRS 41A.039 for filing the complaint.

Sec. 72.5. 1. For the period beginning on October 1, 2002, and ending on October 1, 2005, the division shall monitor and maintain records of all:

(a) Premiums charged for policies of insurance covering the liability of a practitioner licensed to practice medicine, dentistry or osteopathic medicine pursuant to chapter 630, 631 or 633 of NRS for a breach of his professional duty toward a patient; and

(b) Jury verdicts and settlements of cases and claims relating to the liability of a practitioner licensed to practice medicine, dentistry or osteopathic medicine pursuant to chapter 630, 631 or 633 of NRS for a breach of his professional duty toward a patient, including, without limitation:

(1) The amount of each jury verdict or settlement;

(2) For each case or claim, whether any limitation on the amount of any damages applied; and

(3) For each case or claim, the effect of any applicable limitation on the amount of any damages.

2. Not later than November 1, 2005, the division shall deliver to the commissioner for review a report that must include, without limitation:

(a) A summary of the information obtained pursuant to subsection 1; and